UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20403-CR-DIMITROULEAS

15-60299-CR-DIMITROULEAS
15-60293-CR-DIMITROULEAS
15-60294-CR-DIMITROULEAS

UNITED STATES OF AMERICA

vs.

RAMIRO CARO-PINEDA,
    a/k/a "Nolasco,"
    a/k/a "Hugo,"

    Defendant.
_____/

## STIPULATED FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the stated facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, **RAMIRO CARO-PINEDA, a/k/a "Nolasco," a/k/a "Hugo,"**, are sufficient to prove the guilt for (i) Count One of Indictment 15-20403-CR (the "SDFL Indictment"), which charges the Defendant with conspiring to distribute a narcotic controlled substance, knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 963; and (ii) Count One of Indictment 15-60294-CR (the "EDNY Indictment"), which charges the Defendant with operating a continuing criminal enterprise by conspiring to distribute a narcotic controlled substance, knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 963; (iii) Count One of Indictment 15-60293-CR (the "EDTX Indictment"), which charges the Defendant with conspiring to possess or distribute a narcotic controlled substance, in violation of Title 21, United States Code, Section 846; (iv) Count One of Indictment 15-60299-CR (the "MDFL Indictment"), which charges the Defendant

with conspiring to distribute a narcotic controlled substance, knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 963.

More specifically, during the middle of 2012, DEA Agents began investigating RAMIRO CARO-PINEDA, a/k/a "Nolasco," a/k/a "Hugo," a Colombia based drug trafficker. **CARO-PINEDA** worked in drug trafficking ventures with various defendants who were prosecuted in the Southern District of Florida. **CARO-PINEDA** partnered with various other significant drug traffickers who conspired to send cocaine from Colombia to Panama, Honduras, Guatemala and Mexico. The cocaine was ultimately destined for the United States. **CARO-PINEDA** had an ownership interest in cocaine shipments, and also coordinated sending the cocaine from Colombia by aircraft and go-fast boats. **CARO-PINEDA** was the primary link between any drug trafficking organizations that desired to move, pay taxes, or dispatch cocaine loads from territory controlled by Clan Usuga/Los Urabenos. **CARO-PINEDA** controls the area of Necocli, Antioquia, a coastal city in the gulf of Uraba.

According to a cooperating witness (CW1), **CARO-PINEDA** and co-conspriators worked together in various drug trafficking enterprises. CW1 met **CARO-PINEDA** at least 10 times. According to CW1, **CARO-PINEDA** coordinated all of dispatch of drugs from Necocli. CW1 estimates that between 2009 and his capture in 2012, CW1 sent more than 450 kilograms. CW1 also stated that he/she sent CARO-PINEDA multiple 1,000 kilogram shipments. CW1 always dealt with **CARO-PINEDA** directly.

Another cooperating witness (CW2) stated that that he met **CARO-PINEDA** on many occasions and was introduced to him by a friend. CW2 first learned that **CARO-PINEDA** was a high-ranking associate of the Clan Usuga/Los Urabenos when he was involved in setting up a

load with several associates in 2009. CW2 reported that he and co-conspirators organized a maritime drug shipment to depart from the Guajira region of Colombia and needed to ensure they had permission to dispatch cocaine from that area. CW2 cleared the shipment of this load with **CARO-PINEDA.**

In 2010, CW2 was discussing with another co-conspirator the use of airplanes to facilitate narcotics trafficking. CW2 indicated that he/she was aware that **CARO-PINEDA** had control of the air strips within Colombia and then travelled to Turbo, Colombia at the end of 2010 to meet and discuss utilizing the airstrips. CW2 indicated that he coordinated several air shipments that left Colombia and arrived in Guatemala with **CARO-PINEDA.**

In 2011, CW2 was asked to come to a finca in Necocli, Colombia owned by **CARO-PINEDA** owned. CW2, CARO-PINEDA, and the other individuals present discussed drug trafficking in the area of Necocli. **CARO-PINEDA** indicated that he had the airstrips in the areas of Necocli and Turbo. CW2 said that for utilizing the airstrips secured by **CARO-PINEDA** through the Clan Usuga/Los Urabenos, CW2 was required to give 20% of the space on the load to the Clan Usuga/Los Urabenos through **CARO-PINEDA.** CW2 said that he would also have to pay taxes through **CARO-PINEDA** at the rate of $500 to $1,000 per kilo to the Clan Usuga/Los Urabenos. CW2 received Blackberry Pins for everyone he spoke to while at the finca owned by **CARO-PINEDA.** They all agreed to work together.

In 2011, again shortly after the meeting with **CARO-PINEDA** on his finca, CW2 coordinated maritime shipments with CARO-PINEDA and his co-conspirators following the terms agreed to on the finca. **CARO-PINEDA** and his co-conspirators would arrange the crews for the boats, and CW2 would provide a captain that was normally of Honduran nationality. **CW2** indicated that he would send out roughly a boat every other month that first year in 2011

using CARO-PINEDA and his contacts. CW2 added that before every load he had to receive permission directly from **CARO-PINEDA** and to pay taxes prior to the dispatch.

CW2 continued working with **CARO-PINEDA** up until April 2015. The last meeting to discuss the shipment of cocaine ultimately destined for the United States between CW2 and CARO-PINEDA was at a parking lot owned by **CARO-PINEDA** located in Belen, Medellin, in the first quarter of 2015.

A third cooperating witness (CW3) was involved in the dispatch of boats that departed from the area of Necocli and Santa Marta, Colombia during the time frame between 2011 and 2012. The first load CW3 conducted was a total of 2,000 kilograms of cocaine and it departed from the north coast of Colombia near Santa Marta. CW3 was to deliver the cocaine to unknown receivers in Honduras. After successfully delivering the first load, CW3 returned to Colombia and shortly thereafter was summoned to a finca in Necocli, Colombia. CW3 went to the finca to begin organizing a second load. While on the finca and devising the load route, CW3 was introduced to **CARO-PINEDA**. CW3 reported that **CARO-PINEDA** was part owner in the first load he was involved in dispatching and was also part owner of this second planned load. This second load was successfully dispatched. The following day after dispatching the load, CW3 was leaving Necocli to Monteria when he received a Blackberry Pin message to confirm that the load was successfully dispatched and en-route to the rendezvous location near the Honduran/Nicaraguan border. CW3 stated that this second load was successfully received in Central America and totaled 2,500 kilograms of cocaine.

CARO-PINEDA admits that he was a manager or organizer of a continuing criminal enterprise with at least five other members of Clan Usuaga/Urabenos DTO and obtained substantial income or resources from the enterprise's illegal activities. Finally, CARO-PINEDA

admits to being an investor, manager, and/or supervisor sufficiently to establish a three-point enhancement at sentencing.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: _____       By: _____
                          MICHAEL B. NADLER
                          ASSISTANT UNITED STATES ATTORNEY

Date: 12/1/15         By: _____
                          LOUIS CASUSO
                          ATTORNEY FOR DEFENDANT

Date: 12-1-15         By: _____
                          RAMIRO CARO-PINEDA
                          DEFENDANT

Translated by Joelle Haspil, U.S. District Court Certified Interpreter
12/01/15